UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOMINGO MONTAR-MORALES,<br><br>               Petitioner,<br><br>   v.<br><br>MICHAEL OBENLAND,<br><br>               Respondent. | Case No. C19-1811-MJP-MLP<br><br>REPORT AND RECOMMENDATION |

## I.  INTRODUCTION

This is a federal habeas action filed under 28 U.S.C. § 2254. Domingo Montar-Morales ("Petitioner"), proceeding *pro se*, is currently incarcerated at the Monroe Correctional Complex in Monroe, Washington. Petitioner seeks to challenge a 2015 judgment and sentence of the Skagit County Superior Court for his convictions of Second Degree Rape of a Child, Second Degree Residential Burglary, Second Degree Theft, and Third Degree Theft. Respondent filed an answer to Petitioner's amended habeas petition and submitted relevant portions of the state court record. Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends Petitioner's amended habeas petition (dkt. # 13) be DENIED, this

action be DISMISSED with prejudice, and that a certificate of appealability be DENIED as to all claims.[1]

## II. BACKGROUND

### A. Statement of Facts

Petitioner is in custody under a state court judgment and sentence entered by the Skagit County Superior Court for his convictions for rape of a child in the second degree, residential burglary in the second degree, theft in the second degree, and theft in the third degree. (Rec., Ex. 1 (Dkt. # 8-1) at 2-14.) The Washington State Court of Appeals ("Court of Appeals"), on direct appeal, summarized the facts relevant to Petitioner's underlying conviction as follows:

> On July 18, 2014, Montar-Morales was spending time with Noel Lopez-Flores around Lopez-Flores's apartment, located at 1916 Harrison Street in Mount Vernon. Lopez-Flores's aunt Maria Flores-Garcia and her two children, including 12-year-old Y.J., were staying in the apartment that night. Montar-Morales and Lopez-Flores entered the apartment around 11:00 p.m. When Lopez-Flores went to sleep, Montar-Morales was watching television in Lopez-Flores's room.
>
> Y.J. and her relatives were sleeping in the living room of the apartment. Around 1:00 a.m., Y.J. was awoken by a hand touching her. The hand touched her "stomach, between the front and the back, just from the back." At trial, Y.J. indicated on a diagram that she had been touched on the left buttock. Y.J. stated that the hand touching her there went "halfway the knuckle." Y.J. answered affirmatively to the prosecution's follow-up question of "Halfway up to the knuckle of a finger?" In response to the prosecution's question, "And did that go inside of you or stay outside?" Y.J. responded, "Inside." During cross-examination, Y.J. acknowledged that she had previously told investigators and counsel that nothing had entered her anus or vagina.
>
> Y.J. could not see the face of the person touching her. Y.J. unsuccessfully attempted to wake up her mother while she was being touched. Y.J. then got up and locked herself in the bathroom, where she remained for 20 minutes until her mother asked her to come out. There was nobody else in the living room when Y.J. exited the bathroom. Montar-Morales came out of a separate room and was confronted by Y.J.'s mother and cousin, who did not recognize Montar-Morales, and told him to leave or they would call the police.

---

[1] Due to the Court granting Petitioner's motion to amend his habeas petition (dkt. # 15), Petitioner's attached petition in his motion to amend (dkt. # 13) became the operative habeas petition in this matter.

Around 1:00 a.m., Lucia Perez-Ventura and Margarito Lopez-Ramirez were asleep in their apartment unit in 1912 Harrison Street, which is very close to 1916 Harrison Street. Perez-Ventura was awoken by a noise in the apartment caused by an intruder. She woke Lopez-Ramirez, who pursued the intruder. Although the intruder managed to escape, Lopez-Ramirez was able to identify him as Montar-Morales. Lopez-Ramirez returned to the apartment, and he and Perez-Ventura found that his wallet and various other items of property were missing.

Montar-Morales attempted to reenter 1916 Harrison Street through a window, but ran away when Elizabeth Ramirez-Flores turned on a light. Rene Jiminez-Flores and Nicodemo Lopez pursued Montar-Morales. Jiminez-Flores and Lopez caught Montar-Morales, and the three briefly fought in the street.

The police received a call at 1:06 a.m. about three males fighting in the street, and were also told of a possible sexual assault. Officers Chester Curry and Joel McCloud responded to the call, and Sergeant Mike Moore arrived shortly thereafter as supervisor. When they arrived, Jiminez-Flores and Lopez had restrained Montar-Morales, and Montar-Morales was bleeding from a head injury. The officers called for medical assistance. The officers interviewed Jiminez-Flores and Lopez, who told them that Montar-Morales had been involved with the reported sexual assault.

The officers instructed Montar-Morales to remain on the ground, but he did not comply. The officers eventually placed Montar-Morales in handcuffs and informed him that he was being detained for an investigation of an assault, based on the reports of the sexual assault and Montar-Morales's failure to comply. Officer McCloud performed a pat down of Montar-Morales for weapons and did not find any.

Paramedics arrived and evaluated Montar-Morales. The paramedics examined him and felt that a physician needed to attend to Montar-Morales's head injury and conduct further checks. Over Montar-Morales's objections, Officer Moore decided that Montar-Morales was in need of medical assistance based on the paramedics' statements, and transported him to Skagit Valley Hospital's emergency department, where they arrived around 1:30 a.m.

While Montar-Morales was being treated, officers interviewed Y.J., the occupants of 1916 Harrison Street, and the occupants of 1912 Harrison Street who had reported a burglary. The officers called in Detective Jerrad Ely, who interviewed Y.J. and her mother; Y.J. refused to agree to a sexual assault examination. Detective Ely later determined that a photomontage was not necessary to identify Montar-Morales because Lopez-Ramirez knew him, and Lopez and Jiminez-Flores had been with him at the time the police arrived. Montar-Morales had washed his hands at the hospital as part of his treatment, so DNA evidence was unavailable.

REPORT AND RECOMMENDATION - 3

>At 1:36 a.m., Sergeant Moore notified Officer McCloud, who was with Montar-Morales at the hospital, that the investigation had produced probable cause to arrest. Officer McCloud advised Montar-Morales of his constitutional rights and requested that the hospital evaluate his fitness for jail. The hospital declared Montar-Morales fit and released him to Officer McCloud. As Montar-Morales left the treatment table, a nurse noticed that a wallet had dropped containing the identification of Lopez-Ramirez. When Montar-Morales was booked into jail, additional property belonging to Lopez-Ramirez and his family was recovered.
>
>The State charged Montar-Morales by third amended information with rape of a child in the second degree, child molestation in the second degree, residential burglary, theft in the second degree, theft in the third degree, and attempted residential burglary.
>
>Montar-Morales moved to suppress evidence and statements from his arrest. Montar-Morales also moved to sever his child sex offense charges from those for property crimes before trial and following jury selection. The trial court denied Montar-Morales's motions.
>
>At trial, Montar-Morales moved to dismiss the rape of a child charge for insufficient evidence. The court denied the motion.
>
>The jury convicted Montar-Morales on all charges except attempted residential burglary. The trial court vacated the child molestation conviction on double jeopardy grounds based on the child rape conviction. The trial court denied Montar-Morales's post-trial motion to arrest judgment.

(Rec., Ex. 2 at 20-24.)

### B. Procedural History

#### i. *State Court*

Petitioner, represented by counsel, appealed his convictions to the Court of Appeals. (*See* Rec., Exs. 2-5.) On May 8, 2017, the Court of Appeals issued an unpublished opinion affirming Petitioner's judgment and sentence. (*Id.*, Ex. 2 at 35.) The Court of Appeals determined: (1) the trial court did not err in denying Petitioner's motion to suppress because the officers acted reasonably under the totality of the circumstances when they transported Petitioner to the

hospital; (2) Y.J.'s testimony was sufficient to establish sexual intercourse; and (3) Petitioner failed to show he was prejudiced by the denial of his motion to sever. (*Id.* at 29, 31, 35.)

Petitioner next sought review by the Washington Supreme Court. (Rec., Ex. 6 at 157-201.) Petitioner, represented by counsel, presented the following issues to the Washington Supreme Court:

> 1. Where police lacked probable cause to arrest Mr. Montar-Morales, was it error for the trial court to find that a half-hour seizure in which Mr. Montar-Morales was handcuffed, transported away from the alleged crime scene to a hospital despite declining medical aid, supervised by police while there, then forced to receive medical care against his will, was a detention of limited duration, scope, and purpose authorized under *Terry v. Ohio*?
>
> 2. Due process requires that the State prove every element of a crime beyond a reasonable doubt. When the prosecution badgered a young witness into providing testimony of penetration, but then failed to clarify whether it was penetration of just the buttock or anus, should the rape of a child conviction be set aside for insufficient evidence of sexual intercourse?
>
> 3. Was Mr. Montar-Morales deprived of his right to a fair trial when the court denied his motion to sever?

(*Id.* at 163-64.) On October 4, 2017, the Washington Supreme Court denied review without comment. (*Id.*, Ex. 7 at 203.) On October 20, 2017, the Court of Appeals issued the mandate terminating direct review. (*Id.*, Ex. 8 at 205.)

On February 27, 2018, Petitioner, proceeding *pro se*, filed a personal restraint petition in the Court of Appeals. (Rec., Ex. 9 at 207-386.) On June 21, 2018, the Court of Appeals framed Petitioner's alleged issues as: (1) denial of his right to a public trial; (2) false information was used to obtain an arrest warrant; (3) ineffective assistance of counsel; (4) error in the denial of a motion to dismiss the child rape charge; and (5) misconduct of the prosecutor at trial and on appeal. (*Id.*, Ex. 10 at 388.) The Court of Appeals denied the personal restraint petition as frivolous. (*Id.*)

REPORT AND RECOMMENDATION - 5

Petitioner next sought discretionary review by the Washington Supreme Court. (Rec., Ex. 11 at 394-438.) Petitioner presented the following issues to the Washington Supreme Court:

1. Mr. Montar Morales' Claim That the Trial Court Violated His Public Trial Rights, Was Not Frivolous.

2. Mr. Montar Morales' Claim That His Appellate Counsel Was Ineffective for Not Raising the Court Closure on Direct Appeal, Was Not Frivolous.

3. Mr. Montar Morales' Claim That Police Omitted Exculpatory Evidence and Presented False Evidence When Establishing Probable Cause, Was Not Frivolous.

4. Mr. Montar Morales' Claim That His Trial Counsel Was Ineffective, Was Not Frivolous.

5. Mr. Montar Morales' Claim That There Was Insufficient Evidence to Prove the Identity of Him as The Perpetrator of The Child Rape, Was Not Frivolous.

(*Id*. at 395-96.) On April 22, 2019, the Washington Supreme Court denied review, determining Petitioner failed to demonstrate review was warranted under Washington Rule of Appellate Procedure 13.4(b). (*Id*., Ex. 15 at 550.) On July 19, 2019, the Court of Appeals issued a certificate of finality. (*Id*., Ex. 16 at 552.)

### ii. Federal Court

Petitioner filed his initial habeas petition on November 19, 2019. (Pet. (Dkt. # 4).) On January 15, 2020, Respondent filed a response. (Answer (Dkt. # 7).) On February 5, 2020 Petitioner filed an amended petition. (Am. Pet. (Dkt. # 9).) However, the Court found Petitioner failed to move to amend his habeas petition prior to filing, as required pursuant to Federal Rule of Civil Procedure 15, to add his additional claim for relief. (Dkt. # 10.)

REPORT AND RECOMMENDATION - 6

On February 25, 2020, Petitioner moved to amend his habeas petition and attached a proposed amended complaint as an exhibit to his motion to amend.[2] (Mot. (Dkt. # 13) at 5-46).) On March 5, 2020, this Court granted Petitioner's motion to amend. (Order (Dkt. # 15).) On March 30, 2020, Respondent filed a response to Petitioner's amended petition.[3] (Resp. (Dkt. # 16).) The matter is now ripe for review.

### III.    GROUNDS FOR RELIEF

Petitioner identifies the following claims for relief in his amended habeas petition:

1. "Arrested without probable cause." (Mot. at 9.)

2. "The denial of Motion to Sever denied Mr. Montar-Morales of his right to a fair trial." (*Id.* at 11.)

3. "The State did not prove beyond a reasonable doubt that Mr. Montar-Morales raped Y.J." (*Id.* at 12.)

4. "Detective Ely omitted exculpatory evidence, included false statements, misled the State and trial court to obtain probable cause." (*Id.* at 14.)

5. "Mr. Montar Morales' claim that there was insufficient evidence to prove the identity of him as the perpetrator of the child rape, was not frivolous." (*Id.* at 18.)

### IV.    STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if: (1) the state court's decision

---

[2] Petitioner's attached amended complaint included different substantive information and an additional ground for relief than his earlier amended complaint submission. (*Compare* Am. Pet. at 1-18 *with* Mot. at 5-46.)

[3] Respondent's answer responded to Petitioner's first amended petition. (Dkt. # 9). The Court construes Respondent's pleadings as a response to Petitioner's attached petition in his motion to amend.

REPORT AND RECOMMENDATION - 7

1  was contrary to, or involved an unreasonable application of, clearly established federal law, as

2  determined by the Supreme Court; or (2) the decision was based on an unreasonable

3  determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). In considering

4  claims pursuant to § 2254(d), the Court is limited to the record before the state court that

5  adjudicated the claim on the merits, and the petitioner carries the burden of proof. *Cullen v.*

6  *Pinholster*, 563 U.S. 170, 181-82 (2011); *see also Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th

7  Cir. 2013). "When more than one state court has adjudicated a claim, [the Court analyzes] the

8  last reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005) (citing *Ylst v.*

9  *Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

10  Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition

11  only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

12  question of law, or if the state court decides a case differently than the Supreme Court has on a

13  set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

14  Under the "unreasonable application" clause, a federal habeas court may grant the habeas

15  petition only if the state court identifies the correct governing legal principle from the Supreme

16  Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at

17  407-09. The Supreme Court has made clear that a state court's decision may be overturned only

18  if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The

19  Supreme Court has further explained that "[a] state court's determination that a claim lacks merit

20  precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

21  of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting

22  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

23

REPORT AND RECOMMENDATION - 8

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. This includes the Supreme Court's holdings, not its dicta. *Id.* "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceedings."). The Court presumes the state court's factual findings to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." *Dretke*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

### V.    DISCUSSION

#### A.    Claims One and Four – Probable Cause for Search and Seizure

Petitioner initially alleges that he was arrested by police without probable cause and Detective Ely excluded exculpatory evidence and misled the court when obtaining a search warrant. (Mot. at 9, 14, 25-28.) Petitioner argues that Detective Ely omitted two other possible suspects and Y.J. allegedly gave conflicting statements when interviewed by Detective Ely in order to obtain probable cause. *Id.* at 14. Respondent asserts that Petitioner's claims implicate

1    Fourth Amendment concerns, and therefore, are not cognizable in this federal habeas proceeding.

2    (Resp. at 10-11.)

3          The Fourth Amendment assures the "right of the people to be secure in their persons,
houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held that federal habeas review of a Fourth Amendment claim is barred unless the petitioner can show he was "denied an opportunity for full and fair litigation of that claim at trial and on direct review." *Id.* at 494 n.37. The Supreme Court reasoned that because Fourth Amendment claims turn on police misconduct, and not on actual guilt or innocence, they have "no bearing on the basic justice of [one's] incarceration." *Id.* at 491-92 n.31.

      Where the State has provided an opportunity for a "full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494; *see also Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005). Therefore, the relevant inquiry is whether the petitioner was afforded a full and fair hearing, not whether the state court reached a correct resolution. *See Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994); *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990); *Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986).

      Here, the record demonstrates Petitioner challenged the admissibility of the challenged evidence in the trial court under Washington Superior Court Criminal Rule 3.6, which provides a process for criminal defendants to seek to suppress unlawfully obtained evidence. (Rec., Ex. 2 at 24; Rec., Ex. 17 (Dkt. # 8-2) at 67-83.) Petitioner additionally pursued his search and seizure claims in the Court of Appeals on direct review. (Rec., Ex. 2 at. 24-29.) Because Petitioner had a

full and fair opportunity to litigate his Fourth Amendment claims in the state courts, his search and seizure claims are not cognizable in this federal habeas action. *See Stone,* 428 U.S. at 494 n.37. Therefore, this Court recommends that Petitioner's first and fourth claims for habeas relief should be denied.

### B.   Claim Two – Denial of Motion to Sever and Right to a Fair Trial

Next, Petitioner alleges that he was denied his constitutional right to due process and a fair trial due to the trial court's dismissal of his motion to sever. (Mot. at 11, 29-35.) Petitioner argues that: (1) joinder is inherently prejudicial, and therefore, severing his charges was necessary to preserve a fair trial; (2) the mixing of the nonviolent property crimes with the child sex offenses prejudiced his right to a fair trial on all charges; and (3) Petitioner's right to a fair trial outweighed any judicial economy interest in trying all charges together. (*Id.* at 29, 35.) Respondent contends that the United States Supreme Court has never held improper joinder of charges violates the Constitution, and consequently, the state courts' adjudication of Petitioner's motion to sever cannot be contrary to, or an unreasonable application of, clearly established law. (Resp. at 11-13.)

Improper joinder "rise[s] to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). However, the Ninth Circuit has since clarified that the Supreme Court's footnote comment in *Lane* regarding misjoinder and a defendant's right to a fair trial was dicta, and therefore, could not constitute "clearly established Federal law" under AEDPA. *Collins v. Runnels,* 603 F.3d 1127, 1132 (9th Cir. 2010), *cert. denied*, 562 U.S. 904 (2010); *see also Blackwell v. Glebe*, 2011 WL 4945893, at *8 (W.D. Wash. Sept. 12, 2011). The Ninth Circuit specifically noted in *Collins* that "*Lane* dealt with the joinder of standards under

Federal Rules of Criminal Procedure 8 and 52; no constitutional issue was before the Court" and that clearly established Federal law, as determined by the Supreme Court "refers to the holdings, *as opposed to the dicta,* of this Court's decisions as of the time of the relevant state-court decision." *Id.* (emphasis in original) (citing *Williams,* 529 U.S. at 412).

Consequently, this Court may grant habeas relief on a joinder challenge only "if the joinder resulted in an unfair trial." [4] *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (quoting *Sandoval v. Calderon*, 241 F.3d 765, 771-72 (9th Cir. 2001)); *see Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991). "The requisite level of prejudice is reached only 'if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict.'" *Davis*, 384 F.3d at 638 (quoting *Sandoval*, 241 F.3d at 772). In evaluating prejudice, the Ninth Circuit has focused on cross-admissibility of evidence and the danger of "spillover" from one charge to another, especially where one charge or set of charges is weaker than another. *Id.*

In finding the trial court did not abuse its discretion in refusing to sever the joined charges, the Court of Appeals found:

> The trial court did not manifestly abuse its discretion in denying Montar-Morales's motion to sever. The court found that Montar-Morales's charges were intertwined. The court considered the proximity of the two addresses, the short time frame of the chase and apprehension, and the potential sexual motivation linking the offenses. The court determined that, collectively, there was a similarity of criminal activity, location, and time involving the potential thefts and sexual misconduct at each location that weighed against severance of the charges.
>
> Even assuming that Montar–Morales was prejudiced by the trial court's refusal to sever his sexual offenses from his nonviolent property offenses, he was not unduly prejudiced. First, the State had a strong case for all charged offenses. The State

---

[4] Although Supreme Court precedent provides the sole source of clearly established federal law for AEDPA purposes, circuit precedent can be "persuasive authority for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law" and in ascertaining "what law is 'clearly established.'" *Duhaime v. Ducharme,* 200 F.3d 597, 600-01 (9th Cir. 2000) (citations and internal quotations omitted).

REPORT AND RECOMMENDATION - 12

offered circumstantial evidence, the in-court testimony of Y.J. regarding where the hand touched her, that it went "inside," and the diagram showing where the touching occurred. This was not outweighed by the physical and testimonial evidence offered on the property crime charges.

Second, Montar-Morales was not prejudiced in his ability to defend against his property crime charges due to the joinder of the claims. Montar-Morales elected to not submit Lopez-Ramirez's statement that he initially thought Montar-Morales was in jail and could not be the perpetrator, because Montar-Morales feared that the jury would decide that he was predisposed to criminal activity. The statement of belief that Montar-Morales was in jail would be equally prejudicial to both sex offenses and property offenses by suggesting a criminal disposition. Montar-Morales was not more prejudiced from offering the statement in defense of the property crimes than he was from offering it regarding the child sex offenses.

Third, the trial court's limiting instruction was sufficient to address any prejudice resulting from joining the counts. The trial court instructed the jury that: "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." [footnote omitted] The jury is presumed to follow the trial court's instructions. *State v. Bourgeois*, 133 Wn.2d 389, 409-10, 945 P.2d 1120 (1997). The court's instruction told the jury that a finding of guilt on any one count should not weigh in their decision on any other. We presume that the jury followed the court's limiting instruction, and did not consider Montar-Morales's property crimes when deciding his sexual offenses.

Montar-Morales argues that he was prejudiced because evidence for the child rape charge should not have been admissible against him in a trial on the property offenses.

Cross-admissibility considerations involve evaluating whether the evidence of various offenses would be admissible to prove other charges if each offense was tried separately. [*State v. Ramirez*, 46 Wn. App. 223, 226 (1986)]. Res gestae allows otherwise inadmissible evidence to come in to show the immediate context of the occurrence. *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995); ER 404(b).

The trial court ruled that the evidence supporting the property crimes was sufficiently close in time and place to fall within res gestae. The trial court considered the time, geographic proximity, and link of possible sexual motivation in its ruling. Montar-Morales's actions formed a common series of events that were close enough in time and space to justify the trial court's finding of res gestae. We cannot say that the trial court manifestly abused its discretion in finding that Montar-Morales's actions fell within res gestae.

In sum, Montar-Morales has failed to produce sufficient evidence of prejudice to outweigh concerns for judicial economy in trying his nonviolent property charges

REPORT AND RECOMMENDATION - 13

1         and sexual misconduct charges separately. We cannot say that the trial court manifestly abused its discretion in denying his motion to sever.

2

3 (Rec., Ex. 2, at 33-35.)

4       Here, Petitioner fails to demonstrate the Court of Appeals' rejection of his misjoinder claim contradicted, or unreasonably applied, binding United States Supreme Court precedent. The Supreme Court has never held that improper joinder of charges violates the Constitution. *See Lane*, 474 U.S. at 446 n.8; *Collins*, 603 F.3d at 1132. Under the scope of review mandated by AEDPA, because the Supreme Court has not held improper joinder violates a constitutional right, this Court is without power to grant habeas relief on this claim. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 405-07. Therefore, the Court of Appeal's adjudication of Petitioner's misjoinder claim was not contrary, or an unreasonable application of, clearly established federal law for the purposes of § 2254(d)(1).

      Petitioner additionally fails to demonstrate the Court of Appeals' ruling was otherwise based on an unreasonable factual determination or that it resulted in an unfair trial. The Court of Appeals reasonably determined that trying the property crimes with the child sex offenses did not cause Petitioner undue prejudice because Petitioner's charges were necessarily "intertwined." (Rec., Ex. 2 at 33.) The Court of Appeals considered the proximity of the two addresses, the short time frame of the chase leading up to Petitioner's apprehension, and the potential sexual motivation linking the charged conduct. (*Id.*) Based on these facts, the Court of Appeals reasonably determined there was a similarity of criminal activity, location, and time involving the thefts and sexual misconduct between the two locations, which weighed in favor of trying all of Petitioner's charges jointly. (*Id.*). Because of the matching criminal activity, location, and time involving the offenses between the two locations, Petitioner has additionally failed to

REPORT AND RECOMMENDATION - 14

demonstrate joinder had a "substantial and injurious effect" on his right to a fair trial or any danger of "spillover" from one charge to another. *See Davis*, 384 F.3d at 638.

The Court finds Petitioner has failed to demonstrate the joinder of his charges was contrary to, or an unreasonable application of, clearly established federal law or was an unreasonable determination of the facts considering the evidence presented in this case. *See* 28 U.S.C. § 2254(d). Therefore, this Court recommends that Petitioner's second claim for habeas relief should be denied.

### C. Claims Three and Five – Sufficiency of the Evidence

Finally, Petitioner alleges that the State failed to prove beyond a reasonable doubt that he raped Y.J. and that there was insufficient evidence to prove his identity at trial. (Mot. at 35-45.) Under his third claim for habeas relief, Petitioner argues that Y.J. gave contradictory testimony regarding whether she was touched or not, and there was no physical evidence establishing Y.J. was raped. (*Id.* at 36-38.) Under his fifth claim for habeas relief, Petitioner contends that: (1) his presence at the scene alone was insufficient to prove his identity because Y.J. did not see who assaulted her; (2) Y.J. was unable to identify the individual who assaulted her to the police or at trial; and (3) there were two other males in the apartment who could have been the assailant. (*Id.* at 41-42; Reply (Dkt. # 17) at 2-3.) Respondent argues that Petitioner is not entitled to habeas relief on either claim because the state courts correctly determined the evidence, when viewed in the light most favorable to the prosecution, was sufficient to support the conviction. (Resp. at 16.)

The Constitution forbids the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). When evaluating a claim of insufficiency of the evidence to support a conviction, the reviewing court must decide "whether,

after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990). Review of the record is sharply limited, and the Court owes great deference to the trier of fact. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

On habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge merely because the federal court disagrees—the federal court may do so only if the state court decision was "objectively unreasonable." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)). The Court gives the finder of fact "broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Id.* at 655 (quoting *Jackson*, 443 U.S. at 319). Furthermore, an additional layer of deference is added to this standard of review by 28 U.S.C. § 2254(d), which requires petitioner to demonstrate the state court's adjudication entailed an unreasonable application of the *Jackson* standard. *Emery v. Clark*, 604 F.3d 1102, 1111 n.7 (9th Cir. 2010) (citing *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005)).

A person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old, but less than fourteen years old, not married to the perpetrator, and the perpetrator is at least thirty-six months older than the victim. RCW 9A.44.076(1). Sexual intercourse "has its ordinary meaning and occurs upon any penetration . . . of the vagina or anus however slight, by an object." RCW 9A.44.010(1)(a)-(b).

The Court of Appeals, in analyzing Petitioner's sufficiency of the evidence claim regarding proof of penetration, concluded:

1        Here, a rational trier of fact could have found that Montar-Morales committed child rape. Y.J. indicated that the hand had touched her around the buttocks by drawing on a diagram. Y.J. then testified that the hand touching her went halfway up to the knuckle of a finger "inside" of her. Montar-Morales argues that Y.J.'s testimony is insufficient to prove sexual intercourse beyond a reasonable doubt because Y.J. initially stated that her vagina and anus were not penetrated. Similarly, Montar-Morales suggests that Y.J.'s testimony and diagram are ambiguous and are less supportive of anal rape than penetration of the buttocks alone based on her other testimony. This court does not review the jury's determination of credibility or its resolution of conflicting testimony. The jury was free to credit Y.J.'s statement that the hand touching her had gone "inside" of her over her conflicting statements.

       Penetration of the anus is a reasonable inference from Y.J.'s diagram and her statement that the hand had gone "inside" of her. This court takes the State's evidence as true and draws all reasonable inferences in favor of the State in a sufficiency challenge. Y.J.'s testimony and diagram are sufficient to establish the element of sexual intercourse.

(Rec., Ex. 2, at 32-34.)

The Washington Supreme Court, in evaluating Petitioner's personal restraint petition regarding the sufficiency of the identity evidence, determined:

       Mr. Montar-Morales also challenges the sufficiency of the evidence that he was the one who committed the child rape. But the acting chief judge applied the proper standard, viewing the evidence in the light most favorable to the State and determining whether in that light any rational trier of fact could have found beyond a reasonable doubt that Mr. Montar-Morales committed the crime. *In re Pers. Restraint of Tortorelli*, 149 Wn.2d 82, 93, 66 P.3d 606 (2003). Although the victim was assaulted from behind and did not see the offender's face, Mr. Montar-Morales was present in the apartment on the night in question, he was the only one in the apartment who was up and awake when the crime occurred, and he subsequently approached the victim and tried to tell her something she could not hear before she told anyone what had happened.

(Rec., Ex. 15, at 549-50.)

Here, Petitioner is not entitled to habeas relief on his third claim asserted because the Court of Appeals reasonably determined the evidence, when viewed in the light most favorable to the prosecution, was sufficient to support his conviction. At trial, Y.J. initially testified her vagina and anus were not penetrated, and she had difficulty testifying where she was touched and

REPORT AND RECOMMENDATION - 17

in what manner she was touched. (Rec., Ex. 18 at 151-53, 220-22.) However, it's clear from the record Y.J. was uncomfortable testifying—the trial court judge repeatedly noted her distress, there was a significant delay in her response to questions, and the trial court took multiple recesses during the development of her testimony. (*Id.* at 155, 222-23.) When Y.J. was able to testify, she testified that a hand touched her around the buttocks by marking on a diagram where she was touched and testified that the hand went halfway up to the knuckle inside of her. (Rec., Ex. 2 at 33-34; Rec., Ex. 18 at 224-25.) The jury was entitled to weigh the credibility of Y.J.'s testimony and believe it over Petitioner's evidence. *See Coleman*, 566 U.S. at 655; *Jackson*, 443 U.S. at 319. Based on Y.J's testimony elicited at trial, a rational finder of fact could reasonably conclude Petitioner committed Second Degree Rape of a Child. *See Jackson*, 443 U.S. at 319; *Gordon*, 895 F.2d at 612; *see also* RCW 9A.44.076(1); RCW 9A.44.010(1)(a)-(b).

      Petitioner is additionally not entitled to habeas relief on his fifth claim asserted because the Washington Supreme Court reasonably determined that the identity evidence admitted at trial was sufficient to support Petitioner's conviction. The evidence elicited at trial demonstrated that: (1) Petitioner was in the apartment; (2) Petitioner was the only one awake when the rape occurred; and (3) Petitioner approached Y.J. and tried to say something to her that Y.J. could not hear before she told anyone what happened. (Rec., Ex. 15, at 549-50; Rec., Ex. 18 at 194-98.) Moreover, the other males in the apartment at the time all testified to, or were identified by Y.J. and others, as being asleep before and after the rape occurred. (Rec., Ex. 18 at 162-63, 197, 228, 233-34; Rec., Ex. 19 at 341-42, 361.) Because Petitioner was the only one awake in the apartment and there was no evidence anyone else entered the apartment, a rational finder of fact viewing this evidence in the light most favorable to the prosecution could reasonably conclude Petitioner committed the offense. *See Jackson*, 443 U.S. at 319; *Gordon*, 895 F.2d at 612.

In conclusion, the Court of Appeals' decision is neither contrary to nor an unreasonable application of clearly established law and is based on a reasonable determination of the facts. Accordingly, this Court recommends that Petitioner's third and fifth claims for habeas relief should be denied.

## VI. CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Under this standard, the Court concludes that a certificate of appealability should be denied as to all claims.

## VII. CONCLUSION

For the foregoing reasons, this Court recommends Petitioner's amended habeas petition (dkt. # 13) be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed three pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are

served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 17, 2020.**

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation. The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Marsha J. Pechman.

Dated this 23rd day of June, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge